IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
BONITA WESTER,                    )
                                  )
        Plaintiff,                )
                                  )
    v.                            )   1:20CV502
                                  )
WELL CARE HOME HEALTH OF THE      )
TRIANGLE, INC., and               )
WELL CARE HOME HEALTH, INC.,      )
                                  )
        Defendants.               )
```

### MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

This matter comes before the court on a Motion to Transfer to the Eastern District of North Carolina, (Doc. 12), brought by Defendants Well Care Home Health of the Triangle, Inc., and Well Care Home Health, Inc. (together, "Well Care" or "Defendants"). Defendants seek to transfer Plaintiff Bonita Wester's ("Plaintiff" or "Wester") employment discrimination action to the Eastern District of North Carolina, (id. at 1).

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff worked at Well Care as a Clinical Care Coordinator beginning in July 2018. (Complaint ("Compl.") (Doc. 1) ¶ 15.) Plaintiff is a registered nurse. (Id. ¶ 34.) She "supervised employees and managed patient care throughout the

Piedmont," in addition to managing "documentation associated with the treatment of patients." (Id. ¶¶ 37-38.)

Plaintiff, who was seven weeks pregnant when hired, (id. ¶ 46), alleges that her initial work probation was extended without review - and she was ultimately terminated - due to her pregnancy, (id. ¶¶ 53-59; 102-03). Plaintiff alleges she met her employer's job expectations and had no known performance issues. (Id. ¶¶ 61-62.) During her pregnancy, in December of 2018, Plaintiff presented Well Care with a doctor's note specifying she could not return to work until after her follow-up visit. (Id. ¶¶ 66-68.) Plaintiff was cleared for remote work the following day and worked remotely until her first follow-up visit to the doctor. (Id. ¶¶ 69-70.) After her first follow-up visit, however, Well Care would not allow her to return to work either in-person or remotely, (id. ¶¶ 71-74), even though the doctor's note from her follow-up "did not contain any specific . . . limitation against working remotely," (id. ¶ 75). Nor was Plaintiff allowed to work remotely when a second doctor's note clarified that her health required remote work for the remaining month of her pregnancy. (Id. ¶¶ 87-89.) Well Care insisted that Plaintiff spend at least six hours per day in the office, supposedly due to company policy, even though no such rule applied to her pre-pregnancy, (id. ¶¶ 96-100), and "other

-2-

similarly situated employees had been granted permission to work remotely . . . without having to present themselves in a physical office location for some set period of time each day," (id. ¶ 101). Well Care informed Plaintiff that she had exhausted her available paid time off and would not be able to work remotely, leaving in-person work as her only remaining option. (Id. ¶ 89.)

Plaintiff's employment was terminated on January 3, 2019. (Id. ¶ 16.) The termination email cited Well Care's alleged policy limited remote work to two hours per day as the reason for her termination. (Id. ¶ 102.) Based on what she perceived as pregnancy-based discrimination, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on March 7, 2019, (Doc. 1-1 at 1-2), and received a right-to-sue letter on March 12, 2020, (Doc. 1-3 at 1). Plaintiff subsequently filed an employment discrimination complaint on June 5, 2020, against Defendants. (Compl. (Doc. 1).) She alleged that Defendants terminated her because of her "pregnancy-related disability," and improperly refused her a reasonable accommodation that would have allowed her to work remotely. (Id. ¶ 1.) She alleged violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and Title VII of the Civil Rights of 1964, 42 U.S.C. § 2000e et seq., as amended by the Pregnancy

-3-

Discrimination Act of 1978. (Id. ¶ 7.) Defendants filed this Motion to Transfer on August 5, 2020. (Doc. 12.) Plaintiff responded on August 26, 2020, (Doc. 17), and Defendants replied on September 9, 2020, (Doc. 18).

**II. ANALYSIS**

In Title VII actions, venue is governed by a special venue provision:

> [A]n action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3); see also Harley v. Chao, 503 F. Supp. 2d 763, 772 (M.D.N.C. 2007) ("Venue in Title VII cases is governed by Title VII's own venue provision, 42 U.S.C. § 2000e-5(f)(3), rather than the general venue provision . . . ."). Defendants do not challenge the propriety of venue in the Middle District of North Carolina, instead arguing that venue should be transferred for the convenience of the parties. (Defs.' Mem. of Law in Supp. of Mot. to Transfer ("Defs.' Br.") (Doc. 13) at 8.)

Transfer of venue is governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses,

-4-

in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." To do so, the court must first determine whether the action could have been brought in the district to which Defendants seek transfer. Knight Med., Inc. v. Nihon Kohden Am., Inc., 765 F. Supp. 291, 292 (M.D.N.C. 1991). "After determining that a suit could have been brought in another district, the court must determine whether that forum is a legally convenient one pursuant to 28 U.S.C. § 1404(a)." Id. When making such a determination, a district court must weigh several discretionary factors, including:

> (1) the plaintiff's initial choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws.

Brown v. Flowers, 297 F. Supp. 2d 846, 850 (M.D.N.C. 2003) (citing Plant Genetic Sys. N.V. v. Ciba Seeds, 933 F. Supp. 519, 527 (M.D.N.C. 1996)). It is the moving party's burden to prove that the balance of factors favors transfer. Speed Trac Techs.,

Inc. v. Estes Express Lines, Inc., 567 F. Supp. 2d 799, 803 (M.D.N.C. 2008). While a district court has discretion to transfer the action to a more appropriate venue, a court should not transfer venue when doing so would only shift the inconvenience to another party. See id.

First, in order to assess whether transfer is appropriate, this court must determine whether the transferee court is one which the action could have been brought originally: in other words, whether the transferee court has subject matter jurisdiction over the action, whether venue is proper there, and whether the defendant is amenable to process issuing out of the transferee court. Cable-La, Inc. v. Williams Commc'ns, Inc., 104 F. Supp. 2d 569, 574 (M.D.N.C. 1999). Defendants do not dispute that this case could have been properly brought in the Eastern District of North Carolina. (See Defs.' Br. (Doc. 13).) The balancing factors are therefore assessed as follows.

First, ease of access to proof weighs in favor of transfer where in-state witnesses and evidence are located in a district other than that in which the case was filed. See Speed Trac Techs., 567 F. Supp. 2d at 804. "In weighing this factor, courts consider the relative ease of access to witnesses and other evidence for trial. Courts also examine the number and materiality of witnesses." Id. (citations omitted).

-6-

Defendants persuasively argue that the vast majority of evidence, whether physical records or witnesses, will be found in the Eastern District. (Defs.' Br. (Doc. 13) at 7-8.) However, the Eastern District is directly adjacent to the Middle District. While convenience weighs in favor of transfer, such close "proximity minimizes concerns regarding increased costs or inconvenience . . . ." Corbett v. McHugh, No. 1:11CV700, 2011 WL 6370997, at *3 (M.D.N.C. Dec. 20, 2011). Travel between the Eastern and Middle Districts is relatively easy, and as Plaintiff notes, (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Transfer ("Pl.'s Resp.") (Doc. 17) at 11-12), many of the relevant records are likely digitized and accessible from anywhere, see, e.g., WPB Partners, LLC v. Old Republic Nat. Title Ins. Co., No. 5:12-CV-132-F, 2013 WL 395112, at *6 (E.D.N.C. Jan. 31, 2013) at *4 ("[M]uch of the relevant evidence will be document-based and current electronic storage techniques make the physical location of the documents less relevant."). In fact, Plaintiff's ability to work remotely, (Compl. (Doc. 1) ¶¶ 40-44), suggests that corporate records are available electronically. Thus, while the convenience of accessing proof weighs in favor of transfer, the current venue does not create particular hardship for either party's access to sources of

proof, or for trial - although this court does not find Plaintiff's argument compelling regarding trial convenience.

Plaintiff argues that her residence is more convenient to the Durham courthouse in this District than to the Raleigh courthouse in the Eastern District, noting that "[h]er residence is only 12.2 miles away" from the Durham courthouse. (Pl.'s Resp. (Doc. 17) at 2 n.2.) However, the Durham courthouse houses only a Magistrate Judge. Plaintiff and Defendants have not consented to the jurisdiction of the Magistrate Judge; therefore, the relevant courthouse is in Greensboro. This court finds the burden on the parties to travel for hearings and trial should be assessed in light of the location of the Greensboro courthouse, which poses a significantly different burden than Durham. Neither side is subject to substantial hardship created by possible travel to Greensboro.

Moreover, Plaintiff's claim, as alleged, does not relate to any particular premises of Defendants. (See Pl.'s Resp. (Doc. 17) at 15.) Nor have Defendants provided any reason to suggest that an inspection of the premises might be necessary. (See Defs.' Br. (Doc. 13).) Therefore, Defendants' argument that their premises are located in the Eastern District has no effect on this court's analysis. (Id. at 15-16.) Furthermore, there is no current dispute that Plaintiff is doing business in the

-8-

Middle District of North Carolina and that Plaintiff's employment responsibilities are directed into this district. (Compl. (Doc. 1) ¶ 10; Defs.' Br. (Doc. 13) at 5-7.)

Enforceability of a judgment, if one is obtained, does not carry weight here either. "In deciding transfers between two federal districts, this factor has little relevance because a federal judgment rendered in one district is likely enforceable in another." Triad Int'l Maint. Corp. v. Aim Aviation, Inc., 473 F. Supp. 2d 666, 671 (M.D.N.C. 2006).

"Courts have determined that litigation should take place in the federal judicial district or division with the closest relationship to the operative events." Speed Trac Techs., 567 F. Supp. 2d at 804; see also Weishaupt v. Boston Coll., No. 1:11-cv-1122, 2012 WL 1439030, at *5 (M.D.N.C. Apr. 24, 2012). The primary local interest in this case lies in the Eastern District, as Defendants' business is headquartered there, (Defs.' Br. (Doc. 13) at 3), and Plaintiff resides there, (Pl.'s Resp. (Doc. 17) at 2 n.2). However, Defendants acknowledge that their business operates across the state, including throughout the Middle District. (See Defs.' Br. (Doc. 13) at 3.) Thus, while there may be a somewhat stronger local interest in the Eastern District, this court also holds an interest in seeing

this case resolved. This factor only weighs slightly in favor of transfer.

Other factors to be considered in the transfer analysis include "relative advantage and obstacles to a fair trial; . . . other practical problems that make a trial easy, expeditious, and inexpensive; . . . administrative difficulties of court congestion; . . . and . . . avoidance of unnecessary problems with conflicts of law." Plant Genetic Sys., 933 F. Supp. at 527. There are no known obstacles to a fair, expeditious trial in this district, nor are there any conflicts of law between two federal districts within North Carolina.

Plaintiff raises the issue of judicial efficiency in the two districts as a reason to oppose transfer. (Pl.'s Resp. (Doc. 17) at 16-17.) "When evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, caseload per judge, and number of civil cases over three years old." Speed Trac, Techs., 567 F. Supp. 2d at 805. Plaintiff notes that "proceeding in the Middle District could result in a speedier adjudication" given the Middle District's lower number of pending cases. (Pl.'s Resp. (Doc. 17) at 17.) Given the Eastern District is not alleged to be experiencing any extraordinary delays separate from the COVID-19 delays present

-10-

in all courts, this court does not see any reason to weigh this factor heavily.

Plaintiff's choice of forum in the Middle District is ultimately the strongest factor weighing against transfer. "The moving party bears the burden of establishing that transfer to another venue is proper." IHFC Props., LLC v. APA Mktg., Inc., 850 F. Supp. 2d 604, 622 (M.D.N.C. 2012) (internal quotations omitted). Plaintiff argues that Title VII cases require special, extra deference for a plaintiff's choice of venue. (Pl.'s Resp. (Doc. 17) at 2.) The Fourth Circuit has not addressed this issue and has certainly not held that Title VII cases require any such additional deference on top of the already heavy consideration of a plaintiff's choice. Contrary to the single Northern District of California case Plaintiff cites for this proposition, (id. (citing Ellis v. Costco Wholesale Corp., 372 F. Supp. 2d 530, 537 (N.D. Cal. 2005))), the Fifth Circuit has held courts should not be "attributing decisive weight to the plaintiff's choice of forum," and should instead treat the plaintiff's choice as merely "a factor to be considered" in Title VII cases. In re Horseshoe Ent., 337 F.3d 429, 434 (5th Cir. 2003). This court agrees with the Fifth Circuit, given the absence of any Fourth Circuit precedent suggesting Plaintiff's choice should be accorded even more weight.

However, even absent special consideration for Title VII cases, a district court weighing the transfer factors must not disturb a plaintiff's choice of venue "unless the balance is strongly in favor of the defendant[.]" Collins v. Straight, Inc., 748 F.2d 916, 921 (4th Cir. 1984) (emphasis added) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)). Of course, "[w]hile the plaintiff's choice of forum is accorded substantial weight, the deference given to the plaintiff's choice is proportionate to the relation between the forum and the cause of action." Parham v. Weave Corp., 323 F. Supp. 2d 670, 674 (M.D.N.C. 2004) (citing In re Carefirst of Maryland, Inc., 305 F.3d 253, 260 (4th Cir. 2002)).

Here, Plaintiff's chosen forum is not the most directly tied to the cause of action – her employer's alleged behavior occurred in the Eastern District, not the Middle District, and both parties reside in the Eastern District. However, given that Defendants' business activities stretch across the Middle District, and Plaintiff was expected to work in the Middle District, this district is not entirely unrelated to the cause of action. "The cases where a plaintiff's choice of forum becomes neutral typically involve a plaintiff choosing a state in which none of the operative events took place and where none of the parties reside and often involve great distances between

the fora." WPB Partners, LLC v. Old Republic Nat'l Title Ins. Co., No. 5:12-CV-132-F, 2013 WL 395112, at *5 (E.D.N.C. Jan. 31, 2013) (collecting cases). Plaintiff's choice of venue is still preferred, even where other factors point slightly in favor of transfer and the chosen district is not the most integral to the cause of action.

> While several factors may weigh slightly in favor of transfer here, these factors do not overcome the weight of [the plaintiff's] choice of venue. [The plaintiff's] choice of venue is given less weight because it chose to file this case in a forum possessing a limited connection to the operative facts. However, because [the plaintiff] is willing to conduct relevant discovery in the Western District and thus the inconvenience to the witnesses will be minimal, the court will not disturb [the plaintiff's] choice.

Id. at *7.

The factors weighing in favor of transfer are largely matters of convenience – and since the two districts are adjacent, retaining this case in the Middle District does not create substantial inconvenience to any parties. This court does not find that the remaining factors meet the high bar required for transfer out of Plaintiff's chosen forum.

## III. CONCLUSION

This court will therefore deny Defendants' Motion to Transfer and the matter will remain in the Middle District of North Carolina.

-13-

**IT IS THEREFORE ORDERED** that Defendants' Motion to Transfer, (Doc. 12), is **DENIED**.

This the 5th day of August, 2021.

_____
United States District Judge